**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 1:21-cv-01474-NYW

LEINA GIGER,

    Plaintiff,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,

    Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Pending before the Court is Plaintiff Leina Giger's ("Plaintiff" or "Ms. Giger") "Petition for Review of Application for Naturalization Pursuant to 8 U.S.C. § 1421(c)" (the "Petition"). [Doc. 1, filed June 2, 2021]. Plaintiff filed her Opening Brief on December 29, 2021, [Doc. 14], and Defendant United States Citizenship and Immigration Services ("Defendant" or "USCIS") filed its Response Brief on February 4, 2022, [Doc. 17]. Plaintiff filed her Reply on February 22, 2022. [Doc. 18]. The issues have been fully briefed and are ripe for resolution without the need for oral argument. For the reasons stated below, the Court respectfully **DENIES** Plaintiff's Petition.

**BACKGROUND**

At the time of the filing of her Petition, Plaintiff was a 22-year-old native of Switzerland. [Doc. 1 at ¶ 22]. She became a lawful permanent resident of the United States in 2012, and has lived in Boulder, Colorado since 2017. [*Id.* at ¶¶ 22–23]. On March 29, 2018—when she was 19 years old—Plaintiff was stopped by police in Texas for driving on a highway entrance ramp at an

excessive speed. [*Id.* at ¶ 24; Doc. 1-1 at 2].[1] After allegedly detecting a suspicious odor, the police requested to search her vehicle and Plaintiff agreed. [Doc. 1-1 at 2]. Police discovered 1.1 grams of marijuana, three pipes containing marijuana residue, and one marijuana grinder containing marijuana residue. [*Id.*]. Police charged Plaintiff with possession of a controlled substance and possession of drug paraphernalia under Texas law, both misdemeanors. [*Id.*]. She pleaded no contest to the charges, paid a fine, and was granted a deferred disposition by the Texas court adjudicating her case. [Doc. 1 at ¶ 25]. The matter was subsequently dismissed pursuant to the terms of Plaintiff's deferred disposition. [*Id.*].

On November 22, 2019, Plaintiff submitted her Application for Naturalization (the "Application") to Defendant. [*Id.* at ¶ 26]. She appeared for an interview regarding her Application on July 17, 2020. [*Id.*]. At the interview, Plaintiff testified that she had used marijuana "about 10 times between high school and approximately 2018." [Doc. 1-2 at 2]. Her attorney recommended that she not answer further questions about her marijuana use at the interview; Plaintiff complied with that advice and did not answer Defendant's additional questions regarding her prior use of marijuana. [*Id.*].

USCIS denied Plaintiff's Application on September 8, 2020. [Doc. 1-1 at 1]. It reasoned that she was "not eligible for naturalization," as "the unlawful act (or acts) for which you have been convicted adversely reflect(s) upon your moral character." [*Id.* at 1–2]. Defendant further concluded that Plaintiff had "not established any extenuating circumstances that would warrant a departure from this finding." [*Id.* at 2]. On February 2, 2021—following an appeal of the September 8, 2020 decision—Defendant vacated the original decision but reiterated its denial of Plaintiff's Application. [Doc. 1-2 at 1]. Plaintiff had argued that Defendant was tasked with

---

[1] Citations to the record refer to the document and page numbers generated automatically by the United States District Court for the District of Colorado's Electronic Case Filing ("ECF") system.

weighing her conduct against the average standards of her community, which Defendant conceded. [*Id.*]. Nevertheless, Defendant concluded that possessing marijuana paraphernalia was illegal in Colorado for those under the age of 21. [*Id.*]. Therefore, Defendant reasoned that Plaintiff's "specific conduct is not consistent with the standards of the average citizen in the community since it is not legal here (or in Texas)." [*Id.* at 2]. That decision constituted "a final administrative denial of [Plaintiff's] naturalization application." [*Id.*].

Plaintiff filed suit on June 2, 2021, seeking judicial review of Defendant's decision pursuant to 8 U.S.C. § 1421(c). *See* [Doc. 1]. The case was originally assigned to the Honorable Marcia S. Krieger, [Doc. 2], but was reassigned to the undersigned judicial officer on August 5, 2022, [Doc. 21]. With this factual and procedural background in mind, the Court turns to a consideration of the standards that will govern its analysis in this matter.

## STANDARD OF REVIEW

Congress has tasked courts with reviewing applications for naturalization *de novo*; as such, courts make their "own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing *de novo* on" a given application.[2] 8 U.S.C. § 1421(c). "This grant of authority is unusual in its scope—rarely does a district court review an agency decision *de novo* and make its own findings of fact." *Nagahi v. Immigr. & Naturalization Serv.*, 219 F.3d 1166, 1169 (10th Cir. 2000).

---

[2] At first glance, 8 U.S.C. § 1421(c) appears to require that a reviewing court "conduct a hearing *de novo*" "at the request of the petitioner." That said, federal courts have declined to interpret the provision as actually mandating an evidentiary hearing where there is no genuine dispute as to any material facts. *See Chan v. Gantner*, 464 F.3d 289, 295–96 (2d Cir. 2006) (holding that "the mere use of the word 'hearing' in [the] statute does not mandate [that] an evidentiary hearing be held"); *see also Beleshi v. Holder*, No. 12-11681, 2014 WL 4638359, at *4 (E.D. Mich. Sept. 16, 2014). Given the absence of any apparent or material factual dispute in this case, a hearing would not aid the Court in resolving the issues before it.

With that in mind, *de novo* review of a denial of a naturalization application "is in stark contrast to the appeal process for orders of deportation and petitions for asylum, in which federal courts accord the Attorney General great deference." *O'Sullivan v. United States Citizenship and Immigr. Servs.*, 453 F.3d 809, 811 (7th Cir. 2006).  The Court does not defer to any of Defendant's factual findings or conclusions of law in reviewing an application for naturalization.

Nevertheless, the burden remains on the applicant "to show [her] eligibility for citizenship *in every respect*."  *Berenyi v. Dist. Dir., Immigr. and Naturalization Serv.*, 385 U.S. 630, 637 (1967) (emphasis added) (internal quotation marks omitted).  And as the Supreme Court has instructed, "there must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko v. United States*, 449 U.S. 490, 506 (1981).  As such, any "doubts should be resolved in favor of the United States and against the claimant."  *Berenyi*, 385 U.S. at 637 (internal quotation marks omitted); *see also United States v. Macintosh*, 283 U.S. 605, 626 (1931).

To qualify for naturalization, an individual must successfully demonstrate that she: (1) has resided continuously in the United States for at least five years immediately prior to applying for naturalization after first "being lawfully admitted for permanent residence," has been physically present in the United States for at least half of those five years, and has resided within the state in which the individual applied for at least three months; (2) "has resided continuously within the United States from the date of the application up to the time of admission to citizenship"; and (3) during all of these periods, "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."  8 U.S.C.§ 1427(a).  Only the third factor—that addressing "good moral character"—is at issue in this case.

Enacted as part of the Immigration and Nationality Act of 1952, the "good moral character" requirement was left loosely defined by Congress through a set of examples of classes that would fail to meet the standard. 8 U.S.C. § 1101(f). Those include "habitual drunkard[s]," "one whose income is derived principally from illegal gambling activities," "one who at any time has been convicted of an aggravated felony," or a number of other categories. *Id.* The list itself is not exhaustive. *See id.* at § 1101(f)(9) ("The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character."). As such, where an applicant is not precluded by § 1101(f), Defendant is tasked with evaluating "claims of good moral character on a case-by-case basis" by considering "the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2).

The statutory period for assessing the moral character of an applicant begins five years immediately preceding the date the application is filed. 8 U.S.C. § 1427(a). Despite that limitation, USCIS may consider "the applicant's conduct and acts at any time prior to that period," 8 U.S.C. § 1427(e), if they "appear relevant to a determination of the applicant's present moral character." 8 C.F.R. § 316.10(a)(2); *see also Nyari v. Napolitano*, 562 F.3d 916, 920 (8th Cir. 2009) ("[A]n applicant's conduct prior to the statutory period is relevant only to the extent that it reflects on his or her moral character within the statutory period."). These standards will govern the Court's review of this dispute.

**ANALYSIS**

The Parties expend much of their briefing discussing the case-by-case factors they believe are relevant to Plaintiff's good moral character. *E.g.*, [Doc. 14 at 13–18; Doc. 17 at 19–21; Doc. 18 at 3–11]. Defendant's decisions below do the same. [Doc. 1-1 at 1–2; Doc. 1-2 at 1–2]. But as noted, the Court conducts a *de novo* review of Defendant's conclusions. 8 U.S.C. § 1421(c).

5

And while the Court respectfully believes Defendant is correct that Plaintiff has failed to meet the "good moral character" standard for naturalization at this time, it centers its analysis in a different place.

To begin, 8 U.S.C. § 1101(f) outlines a set of eight[3] *per se* bars to naturalization on good moral character grounds. For five years preceding an application for naturalization, an individual is ineligible for citizenship if she is:

1. a habitual drunkard;

   . . .

3. a member of one or more of the classes of persons, whether inadmissible or not, described in paragraphs (2)(D), (6)(E), and (10)(A) of section 1182(a) of this title; or subparagraphs (A) and (B) of section 1182(a)(2) of this title and subparagraph (C) thereof of such section 5 (except as such paragraph relates to a single offense of simple possession of 30 grams or less of marihuana), if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period;

4. one whose income is derived principally from illegal gambling activities;

5. one who has been convicted of two or more gambling offenses committed during such period;

6. one who has given false testimony for the purpose of obtaining any benefits under this chapter;

7. one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period;

8. one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43)); or

9. one who at any time has engaged in conduct described in section 1182(a)(3)(E) of this title (relating to assistance in Nazi persecution, participation in genocide, or commission of acts of torture or extrajudicial killings) or 1182(a)(2)(G) of this title (relating to severe violations of religious freedom).

---

[3] 8 U.S.C. § 1101(f)(2) was repealed in 1981. Pub. L. 97-116, § 2(c)(1), 95 Stat. 1611 (Dec. 29, 1981).

8 U.S.C. § 1101(f). Of these categories, the only one that applies to the instant matter is 8 U.S.C. § 1101(f)(3).

Section 1101(f)(3) cross-references several other statutory provisions contained in 8 U.S.C. § 1182, which is entitled "Inadmissible Aliens." There are six specific provisions, each of which applies to a separate class of applicant:

1. 8 U.S.C. § 1182(a)(2)(D) (barring admission of individuals who plan to engage in prostitution or commercialized vice in the United States);

2. 8 U.S.C. § 1182(a)(6)(E) (barring admission of those who have "encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law");

3. 8 U.S.C. § 1182(a)(10)(A) (barring admission of practicing polygamists);

4. 8 U.S.C. § 1182(a)(2)(A) (barring admission of individuals who have been convicted of or *who have admitted to having committed* a crime of moral turpitude or *any law of the United States, a state, or a foreign government related to a controlled substance*);

5. 8 U.S.C. § 1182(a)(2)(B) (barring admission of individuals who have been convicted of two or more offenses "for which the aggregate sentences to confinement were 5 years or more"); and

6. 8 U.S.C. § 1182(a)(2)(C) (barring admission of controlled substance traffickers).

*Compare* 8 U.S.C. § 1101(f)(3) *with* 8 U.S.C. § 1182(a).

Respectfully, the Court believes that subparagraph (A) of § 1182(a)(2) is dispositive in this matter. It provides, in pertinent part, that "any alien convicted of, or *who admits having committed*, or who admits committing acts which constitute the essential elements of . . . a violation of (or a conspiracy or attempt to violate) *any law or regulation of a State, the United States, or a foreign country relating to a controlled substance* (as defined in section 802 of title 21), is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i)(II) (emphasis added). To be a controlled substance under 8 U.S.C. § 1182(a)(2)(A)(i)(II) requires that the substance be federally controlled. *See Madrigal-Barcenas v. Lynch*, 797 F.3d 643, 644 (9th Cir. 2015). Marijuana was, in 2018, and is currently such a

substance. 21 U.S.C. § 812(c)(a)(c)(10).  It follows that if Plaintiff admitted to more than a single offense of a controlled substance offense under state or federal law within five years prior to submitting her Application, Defendant was required to deny the Application.  *See* 8 U.S.C. §§ 1101(f)(3), 1427(a).

To be sure, Congress exempted those who violate controlled substances laws with "a single offense of simple possession of 30 grams or less of marihuana."  8 U.S.C. § 1101(f)(3).  Plaintiff was discovered with 1.1 grams of marijuana on her March 29, 2018 arrest in Texas.  [Doc. 1-1 at 2].  Congress set a limitation above that amount to justify a *per se* finding that an applicant for naturalization lacks good moral character.  But Congress also conditioned that exemption upon a *single* offense, which is not the case here.  Plaintiff admitted to using marijuana "about 10 times between high school and approximately 2018."  [Doc. 1-2 at 2].  And Congress was clear that its bar on naturalization applies to those who "admit[]" to the violation of state or federal controlled substances laws, not just those who have been convicted of such offenses.  8 U.S.C. § 1182(a)(2)(A)(i)(II).

Moreover, Plaintiff was charged not only with the simple possession of marijuana, but also the possession of drug paraphernalia.  *See* [Doc. 14 at 4–5]; *see also* [*id.* at 5 n.3 (citing Tex. Health & Safety Code § 481.125(a))].  The parties have cited no law, and the Court has not independently discovered any, that suggests that charges for possession of drug paraphernalia are encompassed by a single charge for simple possession.  In fact, Plaintiff appears to concede that they are separate offenses.  *See* [Doc. 14 at 4–5 (noting that Plaintiff "was charged with possession of a controlled substance under Texas Health and Safety Code 481.116(b) *and* possession of drug paraphernalia under Texas Offense Code 5026" (emphasis added))].

One of Plaintiff's principal arguments is that Colorado's legalization of marijuana for personal use should alter this analysis for the purposes of determining good moral character. *See, e.g.*, [Doc. 14 at 14–16]. The Court respectfully disagrees that Colorado's state-law determinations should change the outcome of this case. In 2012, Colorado voters approved Amendment 64 to the Colorado Constitution. In relevant part, Amendment 64 provides that "[i]n the interest of the efficient use of law enforcement resources, enhancing revenue for public purposes, and individual freedom, the people of the state of Colorado find and declare that the use of marijuana shall be legal for persons twenty-one years of age or older and taxed in a manner similar to alcohol." Colo. Const. Art. XVIII, § 16(1)(a).

First, it is worth noting that Amendment 64 does not render the conduct at issue in this case lawful; Plaintiff committed her offense in Texas, which has not legalized the recreational use of marijuana. *See* Tex. Health & Safety Code § 481.121. Even if she had been found in possession of marijuana and drug paraphernalia in Colorado, Plaintiff's actions would still be unlawful; she was 19 years old, not 21, at the time. *See* Colo. Rev. Stat. § 18-13-122(3)(b–c) (prohibiting the possession of two ounces or less of marijuana in Colorado by persons under 21 years old; prohibiting possession of marijuana paraphernalia in Colorado by persons under 21 years old).

Second—and as noted above—marijuana remains a Schedule I controlled substance under federal law. *See* 21 U.S.C. § 812(c)(a)(c)(10). As such, its possession and use—as well as the possession of associated paraphernalia—remains unlawful. *See* 21 U.S.C. § 844a(a) ("Any individual who knowingly possesses a controlled substance that is listed in section 841(b)(1)(A) of this title in an amount that . . . is a personal use amount shall be liable to the United States for a civil penalty in an amount not to exceed $10,000 for each violation."); *id.* § 841(b)(1)(A) (listing marijuana as a controlled substance). Section 1182(a)(2)(A)(i)(II)'s bar applies to "any law or

9

regulation of a State, the United States, or a foreign country relating to a controlled substance." 8 U.S.C. § 1182(a)(2)(A)(i)(II).  Even if Plaintiff were over 21 years old when she committed her offenses, and even if they were legal under state law, the fact that her admitted, repeated offenses remain illegal under federal law preclude approval of her application.

Plaintiff has admitted to using marijuana ten times within the five-year period preceding her Application, and was charged with both possession of marijuana and possession of drug paraphernalia in the same period.[4]  As such, 8 U.S.C. § 1427(a)'s requirement that Defendant asses Plaintiff's good moral character—together with the 8 U.S.C. § 1101(f) categories barring naturalization—necessitate denial of Plaintiff's Petition.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Petition, [Doc. 1], is respectfully **DENIED.**

DATED:  October 12, 2022

BY THE COURT:

*Nina Y. Wang*
Nina Y. Wang
United States District Judge

---

[4] Like Defendant, *see* [Doc. 17 at 14], the Court notes that the five-year reachback period for the analysis of "good moral character" ends after March 29, 2023 (that is, five years after her Texas offenses).  This Memorandum Opinion and Order expresses no judgment as to the appropriate outcome if Plaintiff reapplies for naturalization after that point.